No. 23-1192

# In the United States Court of Appeals for the Fourth Circuit

———————

APPALACHIAN POWER COMPANY,
*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

———————

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL ENERGY REGULATORY COMMISSION

———————

## SUPPLEMENTAL BRIEF FOR RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION

———————

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

Carol J. Banta
Senior Attorney

For Respondent
Federal Energy Regulatory
 Commission
Washington, DC  20426
(202) 502-6433

September 10, 2024

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................... 1

ARGUMENT ............................................................................ 3

I.    *LOPER BRIGHT* DOES NOT AFFECT THE STANDARD OF
      REVIEW FOR COMMISSION ORDERS INTERPRETING
      LANGUAGE IN FERC-JURISDICTIONAL CONTRACTS. ........... 3

      A.    The Federal Power Act centers on discretionary terms
            that provide agency flexibility under *Loper Bright*. .............. 3

      B.    *Loper Bright* does not affect this case because judicial
            deference to the Commission's contract interpretations
            did not depend on *Chevron*. ...................................................... 4

II.   THIS COURT'S PRECEDENTS, INCLUDING *CONSOLIDATED
      GAS* AND *KERPEN*, REMAIN GOOD LAW AND REQUIRE
      DEFERENCE TO THE COMMISSION'S REASONABLE
      CONTRACT INTERPRETATION .................................................... 9

III.  *SKIDMORE* DEFERENCE ALSO IS APPROPRIATE
      BECAUSE THE COMMISSION EXTENSIVELY RELIED
      ON ITS SPECIALIZED EXPERTISE TO DETERMINE
      WHETHER APPALACHIAN'S FULL REQUIREMENTS
      CONTRACTS PERMIT USE OF BATTERY STORAGE TO
      SHIFT DEMAND. ........................................................................... 12

CONCLUSION ........................................................................ 16

## TABLE OF AUTHORITIES

**COURT CASES:**                                          **PAGE**

*Arkansas Louisiana Gas Co. v. Hall,*
    453 U.S. 571 (1981) ................................................................. 8

*Bridgeport Hospital v. Becerra,*
    108 F.4th 882 (D.C. Cir. 2024) ............................................ 3

*Burgin v. Office of Personnel Management,*
    120 F.3d 494 (4th Cir. 1997) ........................................ 2, 11

*Cajun Electric Power Cooperative v. FERC,*
    924 F.2d 1132 (D.C. Cir. 1991) ................................... 8, 10

*Caudill v. Blue Cross & Blue Shield of North Carolina,*
    999 F.2d 74 (4th Cir. 1993) .......................................... 2, 9

*Coca-Cola Co. v. Atchison, Topeka & Santa Fe Railway Co.,*
    608 F.2d 213 (5th Cir. 1979) ............................................. 5

*Columbia Gas Transmission Corp. v. FPC,*
    530 F.2d 1056 (D.C. Cir. 1976) ....................................... 5

*Consolidated Gas Supply Corp. v. FERC,*
    745 F.2d 281 (4th Cir. 1984) .....................2, 5, 6, 9, 10, 11, 12, 14

*Empire Healthchoice Assurance, Inc. v. McVeigh,*
    547 U.S. 677 (2006) ........................................................ 2

*Entergy Services, Inc. v. FERC,*
    568 F.3d 978 (D.C. Cir. 2009) ....................................... 4

*FERC v. Electric Power Supply Association,*
    577 U.S. 260 (2016) ........................................................ 4

# TABLE OF AUTHORITIES

**COURT CASES (continued):**                                    **PAGE**

*Jicarillo Apache Tribe v. FERC*,
    578 F.2d 289 (10th Cir. 1978) .......................................................... 11

*Kansas Cities v. FERC*,
    723 F.2d 82 (D.C. Cir. 1983) ............................................................ 7

*Kerpen v. Metropolitan Washington Airports Authority*,
    907 F.3d 152 (4th Cir. 2018) ...........................................2, 8-9, 10, 11

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024) .......................................................... 2, 3, 4, 9

*MISO Transmission Owners v. FERC*,
    860 F.3d 837 (6th Cir. 2017) ......................................................... 14

*Morgan Stanley Capital Group Inc. v. Public Utility District No. 1*,
    554 U.S. 527 (2008) ..................................................................... 4, 8

*National Fuel Gas Supply Corp. v. FERC*,
    811 F.2d 1563 (D.C. Cir. 1987) ...........................5, 6, 7, 8, 9, 10, 12

*Papago Tribal Utility Authority v. FERC*,
    723 F.2d 950 (D.C. Cir. 1983) ......................................................... 5

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................... 2, 3, 13

*Swift & Co. v. Federal Maritime Commission*,
    306 F.2d 277 (D.C. Cir. 1962) ......................................................... 7

# TABLE OF AUTHORITIES

**ADMINISTRATIVE CASES:**                                        **PAGE**

*Arkansas Louisiana Gas Co.,*
    7 FERC ¶ 61,175 (1979) ................................................................... 13

*Blue Ridge Power Agency,*   [*Declaratory Order*]
    181 FERC ¶ 61,048 (2022) .........................................................13-14

**STATUTES:**

Federal Power Act

    Section 205, 16 U.S.C. § 824d ....................................................4, 7-8

# In the United States Court of Appeals for the Fourth Circuit

### No. 23-1192

_____

APPALACHIAN POWER COMPANY,
*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL ENERGY REGULATORY COMMISSION

_____

## SUPPLEMENTAL BRIEF FOR RESPONDENT FEDERAL ENERGY REGULATORY COMMISSION

_____

## INTRODUCTION

Respondent Federal Energy Regulatory Commission (Commission or FERC) respectfully submits this Supplemental Brief in response to this Court's August 27, 2024 Order in this case. The Court directed the parties to file, in advance of oral argument scheduled for September 26, 2024, supplemental briefs addressing the following questions:

1. What impact, if any, does the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* have on our standard of review and analysis in this appeal?

   a. If *Loper Bright* applies to this case, does the FERC's interpretation of the Agreements have the power to persuade under *Skidmore*?

2. Is our analysis regarding the standard of review controlled by any of our prior decisions, *e.g.*, *Consol. Gas Supply Corp. v. FERC*, 745 F.2d 281 (4th Cir. 1984); *Caudill v. Blue Cross & Blue Shield of N.C.*, 999 F.2d 74 (4th Cir. 1993), *abrogated on other grounds by Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006); *Burgin v. Off. of Personnel Mgmt.*, 120 F.3d 494 (4th Cir. 1997); or *Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152 (4th Cir. 2018)?

The Commission submits that *Loper Bright* does not affect the deferential standard of review that this and other Courts afford to the Commission's interpretation of language in wholesale electric power supply contracts. As explained *infra*, that deference predates the *Chevron* decision that *Loper Bright* overruled and has its roots in older cases that recognized the weight of agencies' specialized expertise and the nature of agency-authorized contracts. Those pre-*Chevron* cases also underlie this Court's precedents in Question 2 — especially *Consolidated Gas* and *Kerpen* — which continue to control the standard of review in this case. *See* Brief for Respondent (FERC Br.) at 17 (standard of review section, citing *Consolidated Gas* and *Kerpen*).

Nevertheless, even if the Court were to conclude that *Loper Bright* affects its analysis in this case, the Commission relied on its technical expertise and industry knowledge in analyzing the power supply contracts, giving its interpretation significant weight under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

## ARGUMENT

## I. *LOPER BRIGHT* DOES NOT AFFECT THE STANDARD OF REVIEW FOR COMMISSION ORDERS INTERPRETING LANGUAGE IN FERC-JURISDICTIONAL CONTRACTS.

### A. The Federal Power Act centers on discretionary terms that provide agency flexibility under *Loper Bright*.

In overruling *Chevron* and eliminating judicial deference to agencies' interpretation of statutes in most cases, the Supreme Court nevertheless recognized that deference remains appropriate under some statutes. In particular, the Court noted that "Congress has often enacted" statutes delegating discretionary authority to agencies and that terms "such as 'appropriate' or 'reasonable'" provide "'flexibility.'" *Loper Bright*, 144 S. Ct. at 2263 (citations omitted). The Commission's governing statutes — including the Federal Power Act here — are centered on such discretionary terms. *See*, *e.g.*, *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 884 (D.C. Cir. 2024) ("Parts of the United States

Code are notoriously short on details. . . .  What can FERC allow

companies to charge for electricity transmission?  Rates that are 'just

and reasonable.' 16 U.S.C. § 824d(a).").  Indeed, the Supreme Court

previously explained that, because "[t]he statutory requirement [of the

Federal Power Act] that rates be 'just and reasonable' is obviously

incapable of precise judicial definition," courts give "great deference to

the Commission in its rate decisions."  *Morgan Stanley Cap. Grp. Inc. v.*

*Pub. Util. Dist. No. 1*, 554 U.S. 527, 532 (2008) (citing cases); *see also*

*FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016) (deference

is especially warranted "in a technical area like electricity rate design").

### B. *Loper Bright* does not affect this case because judicial deference to the Commission's contract interpretations did not depend on *Chevron*.

Even aside from the broad discretion that the Federal Power Act

affords to the Commission, *Loper Bright* does not apply to this case

because that decision did not address agency interpretations of

jurisdictional documents such as tariffs or wholesale power agreements.

Though courts have sometimes characterized deference to agency

contract interpretations as "*Chevron*-like" (e.g., *Entergy Servs., Inc. v.*

*FERC*, 568 F.3d 978, 982 (D.C. Cir. 2009)), such deference actually

predates *Chevron* itself. "[E]ven before *Chevron*," courts deferred to agency views on "the meaning of contracts . . . where the understanding of the documents involved is enhanced by technical knowledge of industry conditions and practices." *Nat'l Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1570 (D.C. Cir. 1987) (internal quotations omitted); *Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950, 953 (D.C. Cir. 1983) (in considering a wholesale power contract, court "accord[s] appropriate deference, though not of course conclusive validity, to the judgment of the expert agency that deals with such contracts regularly"); *Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213, 222 (5th Cir. 1979) ("even where the issue is one of pure law, such as interpretation of contracts, . . . room still is present for deference to the views of administrative agencies, particularly where the understanding of the problem is enhanced by the agency's expert understanding of the industry"), *quoted in Consol. Gas Supply Corp. v. FERC*, 745 F.2d 281, 291 n.23 (4th Cir. 1984); *Columbia Gas Transmission Corp. v. FPC*, 530 F.2d 1056, 1059 (D.C. Cir. 1976) ("there is room, in review of administrative agencies, for some deference to their views even on matters of law like the meaning of contracts, . . .

5

where the understanding of the documents involved is enhanced by technical knowledge of industry conditions and practices").

*National Fuel* provides a helpful overview of case law on deference to agency interpretations — notably including this Court's 1984 decision in *Consolidated Gas*, which the D.C. Circuit ultimately chose to follow. *Nat'l Fuel*, 811 F.2d at 1568-72 (overview); *id.* at 1572 ("We thus endorse the Fourth Circuit's view"). *See infra* pp. 9-10 (discussing *Consolidated Gas*).

In *National Fuel*, the outcome of a rate dispute depended on whether a previous Commission-approved settlement reserved a particular issue for later litigation. *See* 811 F.2d at 1568. The Commission determined that the settlement addressed the issue and did not reserve any right to reopen it. *See id.* The D.C. Circuit found "other reasons," aside from *Chevron*, to defer to the Commission's reading of a settlement agreement. One is "the agency's greater expertise." *Nat'l Fuel*, 811 F.2d at 1570. "Construction of a settlement agreement will be influenced by the agency's expertise in the technical language of that field and by its greater knowledge of industry conditions and practices . . . ." *Id.* Indeed, that court had previously

found that, even where a contract dispute goes only to the parties'
contractual intent without policy implications, the interpretation
"nonetheless profits from familiarity with the field of enterprise to
which the contract pertains. . . . [W]e would be foolish not to accord
great weight to the judgment of the expert agency that deals with
agreements of this sort on a daily basis." *Kan. Cities v. FERC*, 723 F.2d
82, 87 (D.C. Cir. 1983), *quoted in Nat'l Fuel*, 811 F.2d at 1570-71.

Another basis for deference is that certain contracts require
agency approval.  *Nat'l Fuel*, 811 F.2d at 1571 ("Congress required the
Commission to take an active role in approving the agreement"); *cf.*,
*e.g.*, *Swift & Co. v. Fed. Mar. Comm'n*, 306 F.2d 277, 281 (D.C. Cir.
1962) (because a shipping agreement was "not simply a private contract
between private parties," the [agency] "not only can, but must, weigh
such considerations as the effect of the interpretation on commerce and
the public"), *quoted in Nat'l Fuel*, 811 F.2d at 1571.  The Federal Power
Act requires utilities to file all rates and charges, including "all
contracts which in any manner affect or relate to such rates, charges,
classifications, and services," with the Commission for approval.  16

U.S.C. § 824d(c).[1] *See also Morgan Stanley*, 554 U.S. at 531 (discussing

Commission jurisdiction over bilateral power purchase contracts).

In a later case — on which this Court has relied — the D.C.

Circuit further explained that a Commission-approved settlement

agreement is "a good deal more than just an agreement between private

parties and was rather more closely akin to an order of the

Commission. . . . Any agreement that must be filed and approved by an

agency loses its status as a strictly private contract and takes on a

public interest gloss." *Cajun Elec. Power Coop. v. FERC*, 924 F.2d 1132,

1135 (D.C. Cir. 1991) (discussing *Nat'l Fuel*, 811 F.2d at 1570-71). For

that reason, "when the agency reconciles ambiguity in such a contract it

is expected to do so by drawing upon its view of the public interest." *Id.*

(internal citation omitted). "[T]herefore, the agency to which Congress

entrusted the protection and discharge of the public interest is entitled

to just as much benefit of the doubt in interpreting such an agreement

as it would in interpreting its own orders . . . ." *Id.*, *quoted in Kerpen v.*

---

[1]    *National Fuel* concerned substantially identical provisions of the
Natural Gas Act; courts cite decisions interpreting the pertinent
sections of both statutes interchangeably. *Ark. La. Gas Co. v. Hall*, 453
U.S. 571, 577 n.7 (1981).

*Metro. Wash. Airports Auth.*, 907 F.3d 152, 164 (4th Cir. 2018).  *See*

FERC Br. 17.

## II.   THIS COURT'S PRECEDENTS, INCLUDING *CONSOLIDATED GAS* AND *KERPEN*, REMAIN GOOD LAW AND REQUIRE DEFERENCE TO THE COMMISSION'S REASONABLE CONTRACT INTERPRETATION.

This Court's precedents regarding deference to agency contract

interpretations continue to control, notwithstanding *Loper Bright*,

because they too derive from that long line of cases separate from, and

indeed preceding, *Chevron*.  In particular, this Court's leading decision,

which influenced the D.C. Circuit's approach, drew on earlier cases to

hold that an agency's contract interpretation "is entitled to deference."

*Consolidated Gas*, 745 F.2d at 291 (citing cases[2]); *see also Caudill v.*

*Blue Cross & Blue Shield of N.C.*, 999 F.2d 74, 80 (4th Cir. 1993) (courts

defer to agency's contract interpretation) (citing other pre-*Chevron*

cases).  Like the D.C. Circuit's *National Fuel* case, *Consolidated Gas*

concerned whether a settlement agreement had reserved an issue; as in

that case, the Commission concluded that it had not.  *See* 745 F.2d at

285.  In affording deference to the Commission's interpretation, this

---

[2]      The Court decided *Consolidated Gas* three months after *Chevron*
issued, but did not mention that decision.

9

Court explained that it did not mean that a court must accept an interpretation "that black means white." *Id.* at 291.  But "if the choice lies between dark grey and light grey, the conclusion of the agency, unmistakably possessed as it is of special expertise, in favor of one or the other will have great weight." *Id.*

More recently, this Court cited *Consolidated Gas* in finding that an agency's contract interpretation was "entitled to 'great weight.'" *Kerpen*, 907 F.3d at 164.  There, the Secretary of Transportation had interpreted the lease of two airports from the federal government to determine whether the airport authority could use revenues from the toll road leading to one of the airports to finance construction of a metro line connecting to that airport.  *See id.*  The Court agreed with the D.C. Circuit that "an agency, when interpreting contracts that it is authorized to approve or disapprove," receives the same "benefit of the doubt" as for interpreting its own orders.  *Id.* (citing *Cajun Elec.*, 924 F.2d at 1135).  The Court went on to conclude that the agency's statutory obligations also supported deference:  "It also makes good sense to defer to this determination because it is clear that Congress assigned the Secretary of Transportation a critical role in what, after

all, is a transportation matter. . . .  It was pursuant to this critical role

that the Secretary of Transportation approved [the contract]." *Id.*

(citing statutes).  *Cf. supra* pp. 7-8 (noting the Commission's statutory

jurisdiction over wholesale power contracts).  Here, Appalachian

entered into the 2017 Agreements under its Commission-authorized

market-based rate tariff (*see* Petition for Declaratory Order at 1, JA 2);

therefore, those contracts fall under the Commission's Federal Power

Act jurisdiction.

In its opening brief, Petitioner Appalachian asserted that this

Court reviews agency contract interpretations de novo.  Br. 16 (citing

*Burgin v. Off. of Personnel Mgmt.*, 120 F.3d 494, 497-98 (4th Cir. 1997)).

Notably, the *Burgin* Court did not mention the precedent established in

*Consolidated Gas*.  The Court did, however, cite a pre-*Chevron* decision

from the Tenth Circuit recognizing that deference to the agency is

appropriate where its administrative interpretation is based on agency

expertise.  120 F.3d at 497 (Court "show[s] substantial deference to an

agency's interpretation of its own regulations . . . relying on the agency's

unique expertise and policymaking prerogatives") (cleaned up); *see*

*Jicarillo Apache Tribe v. FERC*, 578 F.2d 289, 292 (10th Cir. 1978) ("We

recognize the longstanding rule, cited by the FERC, that an agency's interpretation of its own regulation is entitled to great deference on appeal. . . .  The rule is based on the agency's greater expertise in the area they regulate.").

## III. *SKIDMORE* DEFERENCE ALSO IS APPROPRIATE BECAUSE THE COMMISSION EXTENSIVELY RELIED ON ITS SPECIALIZED EXPERTISE TO DETERMINE WHETHER APPALACHIAN'S FULL REQUIREMENTS CONTRACTS PERMIT USE OF BATTERY STORAGE TO SHIFT DEMAND.

Regardless of whether this Court applies the broader *Consolidated Gas/National Fuel* deference to the Commission's interpretation of the "grey" terms of jurisdictional contracts or a narrower standard based on the agency's actual reliance on its expertise, the Court should affirm the *Declaratory Order* on review.

The Commission did invoke its specialized expertise in this case. Indeed, such expertise was key to the Commission's decision to exercise its primary jurisdiction to address this contract dispute:

> [W]e find that the Commission possesses "special expertise which makes the case peculiarly appropriate for Commission decision," because the petition requires interpretation of jurisdictional wholesale power requirements contracts, and how those contracts address a wholesale buyer's proposed investments in non-generation resources such as battery storage. The Commission has special expertise as it not only

reviews utility rules regarding the introduction of battery
storage,[] but related utility programs utilizing demand
response to shift or reduce load.[]

*Declaratory Order* P 15, JA 356 (internal citations omitted); *see Ark. La.
Gas Co.*, 7 FERC ¶ 61,175 at 61,332 (1979) (special expertise is the first
of three factors for exercise of primary jurisdiction).  The Commission
then supported its analysis of the contract terms with extensive
reference to its specialized knowledge regarding full requirements
service, battery storage, and load-shifting, as well as its own prior
orders.  *See Declaratory Order* PP 28-36, JA 361-365.  For that reason,
the Commission's interpretation warrants deference under any of the
precedents discussed above.  It also should carry significant weight
under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944):  "The weight
of [an agency's] judgment in a particular case will depend upon the
thoroughness evident in its consideration, the validity of its reasoning,
its consistency with earlier and later pronouncements, and all those
factors which give it power to persuade, if lacking power to control."
The *Declaratory Order* checks all of those boxes.

Though Appalachian initially argued that the Commission should
not exercise primary jurisdiction (*see Declaratory Order* PP 11, 13,

JA 354-356), it has not challenged the Commission's decision to do so on judicial review. Nor has Appalachian disputed that the Commission does have specialized expertise and that its knowledge of the industry — including full requirements purchase contracts and technical aspects of battery storage — informed its interpretation of the contracts here.

Notwithstanding the foregoing, the Commission submits that this case does not require the Court to decide whether a deferential standard continues to govern judicial review of the Commission's interpretation of contracts. The Court can affirm the *Declaratory Order* without affording deference because the Commission provided the *best* interpretation of the 2017 Agreements. *See* FERC Br. 18-34. *Cf. Consol. Gas*, 745 F.2d at 291 (also reaching the same conclusion as the Commission "independently of agency expertise in the present case[] and purely as a matter of contract interpretation common to many areas of legal endeavor"); *MISO Transmission Owners v. FERC*, 860 F.3d 837, 841 (6th Cir. 2017) ("Either way, we would affirm the

Commission's [tariff] interpretation, whether under fresh review or

deferential review.").[3]

---

[3]      Notably, in the principal briefing in this case, Appalachian did not even question whether the Commission's interpretation of ambiguous language would deserve deference; rather, Appalachian insisted that the contract language here is plain and that the Commission erred by by treating it as ambiguous.  *See* Opening Br. 20-21; *id.* 32 ("FERC goes well beyond the plain language of the Agreements"); *id.* 35 ("the clear and unambiguous terms of the Agreements"); *id.* 39 ("the plain meaning of the Agreements"); *cf. id.* 36 ("While there is no need to look beyond the plain meaning of the Agreements, even if the Agreements are ambiguous, the only reasonable context outside the Agreements themselves is the parties' Virginia Tech Agreement.").  As the Commission explained, however, the 2017 Agreements address neither battery storage investments (FERC Br. 18) nor Customers' ability to reduce energy usage or manage their peak demand (*id.* 25-31).

## CONCLUSION

For the reasons stated, both here and earlier in the Commission's principal brief, the petition for review should be denied and the challenged FERC order should be affirmed.

Respectfully submitted,

Matthew R. Christiansen
General Counsel

Robert H. Solomon
Solicitor

/s/ *Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
Tel.:  (202) 502-6433
carol.banta@ferc.gov

September 10, 2024

# CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that the Supplemental Brief for Respondent has been prepared in a proportionally spaced typeface (using Microsoft Word, in 14-point Century Schoolbook) and contains 2,922 words, not including the tables of contents and authorities and the certificates of counsel.

/s/ *Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
Tel.:  (202) 502-6433

September 10, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of September, 2024, I served the foregoing via email through the Court's CM/ECF system.

/s/ *Carol J. Banta*
Carol J. Banta
Senior Attorney

Federal Energy Regulatory
  Commission
Washington, DC  20426
(202) 502-6433
carol.banta@ferc.gov